1

2

3

4

5

6                        **UNITED STATES DISTRICT COURT**

7                             **DISTRICT OF ARIZONA**

8    Aminadab Orduno,

9              Orduno,                        CV08-0526-TUC-FRZ (JR)

10   vs.                                      **REPORT AND**
                                              **RECOMMENDATION**
11   Dora B. Schriro, et al.,

12             Respondents.

13

14

15

16          Pending before the Court is Aminadab Orduno's Petition for Writ of Habeas

17   Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254.  In accordance with the Rules of

18   Practice of the United States District Court for the District of Arizona and 28 U.S.C.

19   § 636(b)(1), this matter was referred to the Magistrate Judge for report and

20   recommendation.  As explained below, the Magistrate Judge recommends that the

21   District Court, after an independent review of the record, dismiss the Petition with

22   prejudice.

                                            1

I.      __FACTUAL AND PROCEDURAL BACKGROUND__

In its Memorandum Decision affirming Orduno's conviction, the Arizona Court of Appeals summarized the factual background as follows:

> Orduno and an unknown accomplice [subsequently identified as Arturo Astorga] went to the home of Orduno's former employer, M, while M was at work but his wife S, their children C and T, and the children's nanny L were home. Orduno claimed M had sent them and forced his way into the home. At gunpoint, the intruders bound and blindfolded S and L with duct tape and threatened to harm C. Following her captor's instructions, S telephoned M and told him to come home. Before he arrived, Orduno's accomplice left with three-year-old C. As M walked into the house, he saw a masked man holding a gun. The gunman whispered instructions to S, who communicated to M that they had taken C and wanted $500,000 for his safe return. When M responded that he could only obtain $100,000 in cash, the gunman broke a ceramic pot and swore. M recognized the gunman's voice as that of Orduno. Orduno threatened that, if M did not cooperate and return with the money in an hour, C would be returned "in little pieces."

> M left, contacted the police, and gave them Orduno's name. Orduno later saw police outside the front of the house and apparently fled through the back of the house and out of the subdivision. Police found C at Orduno's home being watched by Orduno's wife and sisters. Orduno turned himself in the next day. He at first denied any involvement in C's kidnapping and denied being in M's house. He later admitted participating, but claimed he did so under duress.

*Answer*, Ex. A, pp. 2-3.

After a jury trial, Orduno was found guilty of three counts of kidnapping, three counts of aggravated assault with a deadly weapon, kidnapping a minor under fifteen, and first-degree burglary. *Id*. p. 1. Orduno was sentenced to a presumptive prison term of 17 years for kidnapping a minor, to be followed by concurrently presumptive terms, the longest being 10.5 years, for a total sentence of 27 years. *Id*., pp. 1-2.

2

1   Orduno raised five claims on direct appeal. He asserted that: (1) the trial court

2   erred by rejecting a pre-trial plea agreement; (2) that the prosecution improperly

3   delegated its authority to plea bargain to the victims; (3) that the trial court erred in

4   denying his request for surrebuttal argument on his affirmative defense of duress; (4)

5   that Arizona unconstitutionally places the burden on defendants to prove the

6   affirmative defense of duress; and (5) that Arizona's reasonable doubt instruction is

7   unconstitutional. *Id*., Ex. A, pp. 3-7. By Memorandum Decision filed July 17, 2003,

8   the Arizona court of Appeals rejected Orduno's claims. *Id*., Ex. A. Orduno then

9   sought review of the decision by the Arizona Supreme Court, which denied review

10  by order dated March 17, 2004. *Id*., Ex. K (Petition for Review); Ex. L (Order).

11  While his direct appeal was pending, Orduno began pursuing post-conviction

12  relief (PCR). In April 2001, Orduno filed a Notice of Post-Conviction Relief and in

13  December 2002 he filed the supporting petition. *Id*., Ex. C, p. 2. Orduno raised

14  several ineffective assistance of counsel (IAC) claims, contending that: (1) he was

15  not effectively represented during his pre-trial incarceration period; (2) counsel failed

16  to timely negotiate a plea agreement in the case; (3) trial counsel failed to provide a

17  written motion for the court to accept a plea agreement or move for continuance of

18  the trial; (4) trial counsel failed to effectively represent him at sentencing; and (5)

19  trial counsel should have executed a written contract for Petitioner to testify in

20  exchange for a lower sentence. *Id*., pp. 13-21.

21  In addition to the IAC claims, Orduno also alleged that the State had breached

22  the parties' agreement whereby Orduno would testify against Astorga and the parties

3

1   would seek a reduction of Orduno's sentence.  *Id*., Ex. G, pp. 21-24.  Orduno also

2   claimed that his sentences under the dangerous crimes against children statute,

3   A.R.S. § 13-604.01, violated his constitutional right to a jury trial and that his class 2

4   felony kidnapping conviction was unlawful under Arizona law because he had

5   voluntarily released the kidnapped child before he held the child for ransom.  *Id*. at

6   pp. 7-11, 24-25.

7       In a ruling filed March 19, 2008, the trial court found Orduno's claims

8   meritless and dismissed the petition.  *Id*., Ex. H.  Orduno then sought a rehearing on

9   the petition and, on May 23, 2008, the trial court ruled that he was not entitled to

10  relief.  *Id*., Ex. I.  Orduno then sought review of his post-conviction petition in the

11  Arizona Court of Appeals.  *Id*., Ex. J.  By Memorandum Decision filed January 7,

12  2009, the Court of Appeals granted review but denied relief.  *Id*., Ex. K.

13      In the instant petition, Orduno raises five claims.  In Ground One he asserts

14  that his counsel was ineffective because he failed to secure the beneficial plea offer,

15  failed to meet with Orduno regularly before trial, failed to obtain a psychological

16  examination and present mitigation evidence, and failed to finalize an agreement with

17  the State whereby Orduno's sentence would be reduced in return for his cooperation

18  in the prosecution of his co-defendant.  In Ground Two, Orduno argues that the trial

19  court's rejection of the plea agreement violated his right to due process.  In Ground

20  Three, Orduno contends that the "improper procedures surrounding plea negotiations

21  . . . created sentences that were impermissibly disparate between" Orduno and

22  Astorga.  Ground Four alleges that Orduno's rights under the Fifth Amendment were

4

1  violated because Arizona law impermissibly places the burden of proof on a

2  defendant to prove duress.  In Ground Five, Orduno argues that the reasonable doubt

3  instruction given in his case unconstitutionally diminished the State's burden of

4  proof.

5  **II.    LEGAL DISCUSSION**

6      **A.    Exhaustion/Preclusion**

7      A state prisoner must exhaust the available state remedies before a federal

8  court may consider the merits of his habeas corpus petition.  *See* 28 U.S.C. §

9  2254(b)(1)(A); *Nino v. Galaza,* 183 F.3d 1003, 1004 (9th Cir.1999).  Exhaustion

10  occurs either when a claim has been fairly presented to the highest state court, *Picard*

11  *v. Connor*, 404 U.S. 270, 275 (1971), or by establishing that a claim has been

12  procedurally defaulted and that no state remedies remain available, *Reed v. Ross*, 468

13  U.S. 1, 11 (1984).

14      Exhaustion requires that a habeas petitioner present the substance of his

15  claims to the state courts in order to give them a "fair opportunity to act" upon these

16  claims.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999).  A claim has been

17  "fairly presented" if the petitioner has described the operative facts and legal theories

18  on which the claim is based.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v.*

19  *Wood*, 44 F.3d 1396, 1403 (9th Cir. 1995).  The operative facts must be presented in

20  the appropriate context to satisfy the exhaustion requirement.  The fair presentation

21  requirement is not satisfied, for example, when a claim is presented in state court in a

22  procedural context in which its merits will not be considered in the absence of special

circumstances. *Castille*, 489 U.S. at 351. An exact correlation of the claims in both state and federal court is not required. *Rice*, 44 F.3d at 1403. The substance of the federal claim must have been fairly presented to the state courts. *Chacon v. Wood*, 36 F.3d 1459, 1467 (9th Cir. 1994) (citations omitted).

A petitioner may also exhaust his claims by either showing that a state court found his claims defaulted on procedural grounds or, if he never presented his claims in any forum, that no state remedies remain available to him. *See Jackson v. Cupp*, 693 F.2d 867, 869 (9th Cir. 1982). "To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32," *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then present his claims to the Arizona Court of Appeals. *See Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999).

## 1. Ground Two

Respondents assert that Orduno did not exhaust Ground Two of the Petition. In that claim, Orduno alleges the trial court denied him due process by rejecting a plea agreement that the parties did not proffer until the first day of trial, in contravention of a local superior court rule. *Petition*, p. 7. Respondents contend that the state courts found the claim procedurally defaulted under Arizona law and, therefore, it is precluded from federal habeas review under the independent state ground doctrine. *Answer*, pp. 9-10. In reply, Orduno contends that the claims were

1   presented and addressed by the Arizona Court of Appeals on both direct appeal and

2   in relation to his petition for post-conviction relief.  *Traverse*, p. 7.

3          While Orduno is correct that the Court of Appeals addressed Ground Two on

4   direct appeal and in PCR proceedings, he ignores the fact that in both decisions the

5   claim was determined to be barred from review.   In his direct appeal, Orduno was

6   found to have waived the claim because he was obligated to raise it by special action

7   after it was rejected by the trial court.  As the Court of Appeals explained:

8          Orduno did not seek special action relief from this interlocutory
           decision.  He instead chose to proceed to trial and attempted to secure a
9          favorable outcome.   Consequently, we conclude he has waived this
           argument on appeal.  *See State v. Espinosa*, 200 Ariz. 503, 29P.3d 278
10         (App. 2001) (had defendant timely challenged withdrawal of plea offer,
           either party could have sought special action relief from court's ruling)
11         . . . , *cf State v. Valdez*, 160 Ariz. 9, 13-14, 770 P.2d 313, 317-18
           (1989).
12
   *Answer*, Ex. A, pp. 3-4.   In his PCR proceedings, the trial court and the Court of
13
   Appeals rejected Orduno's contention that a significant change of the law had
14
   occurred and that he was thus entitled to review of the claim under Rule 32.1(g),
15
   Ariz.R.Crim.P.  *Answer*, Ex. C.
16
          To satisfy the requirement that a claim be "fairly presented," the petitioner
17
   must present the claim "through the proper vehicle."  *Insyxiengmay v. Morgan*, 403
18
   F.3d 657, 668 (9th Cir. 2005).  As the claim was presented in state court in procedural
19
   contexts where its merits could not properly be considered, the fair presentation
20
   requirement is not satisfied.  *Castille*, 489 U.S. at 351.
21

22

1    Orduno's contention that the merits were addressed despite the application of

2    the procedural bar is true but unhelpful to his cause.  The state court may reach "the

3    merits of a federal claim in an alternative holding" and still avoid habeas review, "as

4    long as the state court explicitly invokes a state procedural bar rule." *Harris v. Reed*,

5    489 U.S. 255, 264 n. 10 (1989).  The Court of Appeals, on both direct and PCR

6    review, explicitly invoked the rules prohibiting Orduno's claim, explaining on direct

7    appeal that a defendant facing such circumstances must seek special action relief, and

8    that a change of law was necessary before Rule 32.1(g) could be invoked.  As such,

9    this Ground 2 is unexhausted.

10              **II.      Ground 3**

11    In Ground 3, Orduno states that after he was convicted and sentenced, he was

12    offered a sentence reduction in return for testifying against his co-defendant, Astorga.

13    The agreement was never fully consummated and Astorga was eventually sentenced

14    to probation, thereby resulting in what Orduno alleges were "sentences that were

15    impermissibly disparate."  *Petition*, p. 8.  Respondents contend that this claim is

16    procedurally defaulted and precluded from federal review.  Specifically, Respondents

17    allege that, in denying this claim, the state court invoked adequate and independent

18    state grounds for doing so and, additionally, that the claim was not raised as a federal

19    claim.

20    This claim was not raised by Orduno  on direct appeal.  *Answer*, Ex. H (Brief

21    on Appeal).  In post-conviction proceedings, Orduno raised the claim, but it was

22    argued and decided on state law grounds.  *Answer*, Ex. G (Rule 32 Petition), pp. 21-

8

24; Ex. C (Memorandum Decision), pp. 9-10.   Additionally, the post-conviction court found the claim procedurally defaulted because it was not raised on direct appeal.   *Id.*, Ex. C, p. 9.   Thus, as was the case with Ground 2, Ground 3 was not fairly presented through the proper vehicle.   *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

Moreover, Ground 3 was not federalized.   The Ninth Circuit has held that a "general appeal to a constitutional guarantee, such as due process, is insufficient to satisfy fair presentation requirements."   *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir.2000) (quoting *Gray v. Netherland*, 518 U.S. 152, 163 (1996).   "Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory."   *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir.2005). Moreover, "mere similarity between a claim of state and federal error is insufficient to establish exhaustion."   *Shumway*, 223 F.3d at 988 (quotations omitted).   Under these standards, Ground 3 is not exhausted.   The context shows that Orduno raised his equal protection claim as a purely state law matter and cited only state case law. *Answer*, Ex. G, p. 24.   The cited case is not explained or applied.   Orduno's "drive-by" citations, without some explanation or argument, are insufficient to establish fair presentment. *Shumway*, 223 F.3d at 987 ("It is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance of such a claim to a state court.").

### 3.      Ground IV

In Ground IV, Orduno argues that the state court improperly burdened him with proving duress and also improperly prohibited him from presenting a surrebuttal argument on the issue.  *Petition*, p. 9.  Respondents agree that these claims were raised in the state courts, but that the surrebuttal claim was challenged only on state law grounds.  *Answer*, p. 11.  Respondents are correct.  Orduno mentioned no federal authority in arguing this claim on direct appeal.  *Id.*, Ex. H, pp. 18-19.  As such, this claim is not exhausted.  *Castillo*, 399 F.3d at 1003.

### 4.      The unexhausted claims are procedurally barred

Respondents contend and Orduno does not contradict, that Orduno is procedurally barred from now raising these claims in State court.  *See* Ariz.R.Crim.P. 32.2(a)(3) ("A defendant shall be precluded from relief under [Rule 32] based upon any ground . . . [t]hat has been waived at trial, on appeal, or in any previous collateral proceeding.")  Because Orduno did not properly present any of these claims to the Arizona courts, the claims are procedurally defaulted and barred from federal review.  Ariz.R.Crim.P. 32.1, 32.2(a) & (b); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).   As such, the merits of the claims need not be addressed unless Orduno establishes cause and prejudice or that a fundamental miscarriage of justice has occurred.  Orduno has not attempted to do so, and the Court recommends that Orduno's non-exhausted claims be denied.

**B.      Merits**

Under the AEDPA, a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  *See Williams v. Taylor*, 120 S.Ct. 1495 (2000).  A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result.  *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000).  In determining whether a state court decision is contrary to federal law, the court must examine the last reasoned decision of a state court and the basis of the state court's judgment.  *Packer v. Hill*, 277 F.3d 1092, 1101 (9th Cir. 2002).  A state court's decision can be an unreasonable application of federal law either (1) if it correctly identifies the governing legal principle but applies it to a new set of facts in a way that is objectively unreasonable, or (2) if it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

**1.      Ground 1: Ineffective Assistance of Counsel**

In Ground 1 of the Petition, Orduno alleges several instances of ineffective assistance of counsel.  The operative legal standard applicable to these claims is a

11

1   familiar one, addressed by the United States Supreme Court in *Strickland v.*

2   *Washington*, 466 U.S. 668 (1984).  The standards enunciated there by the Court are

3   applied unless there is other Supreme Court precedent directly on point.  *See Wright*

4   *v. Van Patten*, 128 S.Ct. 743, 746 (2008).  Under *Strickland*, Orduno must show both

5   deficient performance and prejudice in order to establish that counsel's representation

6   was ineffective.  466 U.S. at 687.  In the context of habeas claims evaluated under §

7   2254(d)(1) standards, the question "is not whether a federal court believes the state

8   court's determination was incorrect but whether that determination was

9   unreasonable– a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. 465,

10  473 (2007).

11       Orduno's first claim is that his counsel's performance was ineffective because

12  he did not timely present the plea agreement to the trial court and it was therefore

13  rejected.  Under the Sixth Amendment, a defendant is entitled to effective assistance

14  of counsel during plea bargaining.  *Lafler v. Cooper*, 132 S.Ct. 1376, 1388 (2012).

15  Counsel can be found to be ineffective in cases where a defendant has lost benefits he

16  "would have received in the ordinary course but for counsel's ineffective assistance."

17  *Id*.  However, as explained below, even if Orduno's counsel was ineffective due to

18  the untimely presentation of the plea agreement to the trial court, the state court

19  reasonably determined that the trial court would not have accepted the plea even if it

20  had been timely presented.

21       In the last reasoned decision on this claim, the Court of Appeals appropriately

22  identified the *Strickland* standards to evaluate Orduno's counsel's performance, and

12

1   went directly to the prejudice prong as it is entitled to do.  *See Jackson v. Calderon*,

2   211 F.3d 1148, 1155 n. 3 (9th Cir. 2000).  In rejecting the claim, the court stated:

3           The claim that counsel had been ineffective for failing to present
            the plea agreement earlier than the day of trial necessarily fails because,

4           even if deficient, counsel's performance cannot be characterized as
            prejudicial in light of the court's finding that it would not have

5           accepted a plea in these circumstances.

6   *Answer*, Ex. C. pp. 5-6.  The circumstances to which the Court of Appeals refers are

7   those underlying Orduno's conviction, which it summarized as follows:  "Orduno

8   and his codefendant had terrorized a family, holding a mother, her two small

9   children, and the babysitter at gunpoint, demanding money.  They then kidnapped the

10  older child."  *Id*., p. 4.

11          Orduno argues that the trial court, in initially rejecting his plea, relied solely

12  on its untimeliness and made no mention of other grounds for rejecting the plea.

13  However, at the hearing on his PCR petition, the trial judge affirmed his rejection of

14  the plea agreement and expressly stated that: "I still find based upon the facts of this

15  case, particularizing this case, the extreme and egregious behavior from [Orduno] did

16  not warrant this kind of plea agreement."  *Id*., Ex. B, p. 14.  Surmounting *Strickland's*

17  high bar is never . . . easy.'"  *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)

18  (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)).  Establishing that a state

19  court's application of *Strickland* was unreasonable under § 2254(d) is even more

20  difficult, because both standards are "highly deferential," and because *Strickland's*

21  general standard has a substantial range of reasonable applications.  *Harrington*, 131

22  S.Ct. at 788 (citations omitted).  Although, Orduno is correct that the trial court,

1    when it initially rejected the plea agreement, made no mention of the egregious

2    nature of the crime as influencing his decision, given the standards of review, this

3    Court cannot find the decision unreasonable.  As the Court of Appeals noted, the

4    nature of the crime was such that a trial judge could reasonably reject the plea

5    agreement reached before trial.  Given that the record reflects that he would have

6    done so, Orduno cannot show prejudice and this claim must be denied.

7          Orduno next contends that his counsel was ineffective because he did not

8    speak with him until he had "been incarcerated for 126 days and met with him only

9    one other time four months later."  *Petition*, p. 6.  As Respondents point out,

10   Orduno's trial counsel was not appointed to his case until more than two months after

11   Orduno's initial appearance because Orduno had successfully moved for a change of

12   counsel.  *Answer*, Ex. D., pp. 72-76.  Additionally, Orduno does not explain the

13   prejudice that resulted from the delay and, in fact, recalls that he spoke to trial

14   counsel on the phone, but does not remember the dates.  *Id*., p. 76.  Under *Strickland*,

15   Orduno must show both deficient performance and prejudice in order to establish that

16   counsel's representation was ineffective.  466 U.S. at 687.   As the Court of Appeals

17   reasonably determined, *id*., Ex. C, p. 6, nothing in the facts presented by Orduno on

18   this claim support a finding of deficient performance or prejudice.

19         Also in Claim 1, Orduno asserts that his counsel's performance was deficient

20   because he did not seek to have Orduno's psychological condition more extensively

21   examined.  There are a number flaws that are fatal to this argument.  As a threshold

22   matter, Orduno fails to establish what prejudice resulted from these alleged

14

1    shortcomings.  He does not explain how further examination of his suicidal behavior

2    would have benefited him and does not explain what mitigating evidence could have

3    been presented to benefit him at sentencing.  Moreover, as the Court of Appeals

4    stated, the trial court evaluating and rejected this claim, implicitly finding that

5    "nothing counsel might have presented at sentencing, particularly through a

6    psychological evaluation, would have changed the sentences and the [trial] court's

7    view that they were appropriate for the crimes committed."  *Answer*, Ex. C., pp. 5-6.

8    Given the state of the record, and the dearth of evidence Orduno presents, the Court

9    cannot find that the Court of Appeals determination on this claim was unreasonable.

10          Orduno's final ineffective assistance claim relates to the purported agreement

11    between Orduno and the state whereby Orduno would testify against Astorga, his co-

12    defendant, in exchange for a reduction of his sentence.  *Petition*, p. 6.  In relation to

13    this claim, the Arizona Court of Appeals concluded:

14          the [trial] court found, first at the end of the September 26 hearing and
            again after the December 5 hearing, that the parties never had reached a
15          binding "contract" regarding Orduno's cooperation with the state and
            possible resentencing.  This finding is apparently based on and
16          supported by [trial counsel] Martin's December 5 testimony and the
            information that had been provided through counsel during the
17          September hearing.  Orduno has not persuaded us on review that the
            trial court abused its discretion in denying relief on this claim.
18
     *Answer*, Ex. C., p. 8.  Orduno has not explained how this determination was
19
     unreasonable or identified facts that would contradict the state courts' conclusion on
20
     this claim.  Thus, he has not satisfied the requirements that he show both deficient
21
     performance and prejudice under *Strickland*, or even approached establishing that the
22

                                            15

1   state courts' application of *Strickland* was unreasonable under § 2254(d).

2   *Harrington*, 131 S.Ct. at 788.

3                    **2.     Ground 4: Duress**

4           Orduno contends that his due process rights were violated because Arizona

5   law, A.R.S. § 13-205(A), impermissibly imposed upon him the burden of proving his

6   affirmative duress defense.  *Petition*, p. 9.  In denying this claim, the Court of

7   Appeals reiterated that:

8           We recently rejected this argument in *State v. Jeffrey*, 203 Ariz. 111,
            ¶11, 50 P.3d 861, ¶11 (App. 2002), stating "because the absence of
9           duress is not an element of the offense, the legislature may
            constitutionally impose upon the defendant the burden of proving it."

10  *Answer*, Ex. A, p. 6.  As Respondents assert, this holding is entirely consistent with

11  clearly established federal law.  In *Patterson v. New York*, 432 U.S. 197 (1977), the

12  Supreme Court, addressing the burden of proof in relation to the affirmative defense

13  of insanity, noted that, "once the facts constituting a crime are established beyond a

14  reasonable doubt, based on all the evidence including the evidence of the defendant's

15  mental state, the State may refuse to sustain the affirmative defense of insanity unless

16  demonstrated by a preponderance of the evidence."  *Id*. at 206.  Orduno does not

17  identify any element of a charge against him that required the state to prove the

18  absence of duress.  Thus, the requirement that Orduno prove duress was consistent

19  with *Patterson*.

20

21

22

### 3.     Ground 5: Jury Instruction

Orduno asserts that the trial court's instruction on reasonable doubt "unconstitutionally diminished the state's burden of proof, violating due process . . . ." *Petition*, p. 9.   The language used in the jury instruction is drawn from the reasonable doubt instruction adopted by the Arizona Supreme Court in *State v. Portillo*, 182 U.S. 592 (1995).  In summarily denying this claim in Orduno's direct appeal, the Arizona Court of Appeals relied on two then-recent Arizona Supreme Court cases which approved of the instruction: *State v. Prince*, 204 Ariz. 156, 61 P.3d 450 (2003) and *State v. Van Adams*, 194 Ariz. 408, 984 P.2d 16 (1999). *Answer*, Ex. A, p. 7.  The appeals court's decision was neither contrary to, nor an unreasonable application of, clearly established U.S. Supreme Court precedent.

It has been repeatedly noted that the jury instruction given in this matter is a nearly a verbatim copy of the pattern jury instruction on reasonable doubt adopted by the Federal Judicial Center.  *See Van Adams*, 194 Ariz. At 418, 984 P.2d at 26 (noting instruction based on FJC instruction). The Ninth Circuit has upheld language that is identical or substantially similar to the FJC's pattern instruction. *See Himes v. Thompson*, 336. F.3d 848, 853 (9th Cir. 2003).  Accordingly, the Arizona Court of Appeals' decision denying this claim was not clearly contrary to nor an unreasonable application of federal law and Orduno is not entitled to habeas relief on the basis of this claim.

## III.    **RECOMMENDATION**

Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the District Court, after its independent review, **deny** Orduno's Petition for Writ of Habeas Corpus (Doc. 1).

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court.  *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  If any objections are filed, this action should be designated case number: **CV 08-526-TUC-FRZ**.  Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003)(*en banc*).\

Dated this 14th day of January, 2013.

Jacqueline M. Rateau
United States Magistrate Judge

18